**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **DEBORAH LEWIS,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NUTEX HEALTH, INC.,**<br><br>Defendant. | No. ________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Deborah Lewis ("Plaintiff"), individually and on behalf of all similarly situated persons (the "Class" or "Class Members" (as further defined below)), alleges the following against Defendant Nutex Health, Inc., ("Defendant") on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## I. INTRODUCTION

1. Plaintiff brings this class action lawsuit against Defendant, upon information and belief, for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") and protected health information ("PHI"), resulting in a data breach.

2. Defendant is a healthcare services and operations company that operates micro hospitals, specialty hospitals, and outpatient departments (referred to herein as "Defendant's Clients" or "Clients") to optimize their financial performance.[1]

3. Plaintiff and Class Members are current and former patients of Defendant's Clients.

4. During the ordinary course of business, Defendant acquired the PII and PHI of

[1] *See generally*, NUTEX HEALTH, https://nutexhealth.com/.

Plaintiff and the Class.

5. On or around August 24, 2026, Defendant disclosed in a Form 8-K SEC filing that an unauthorized third party accessed and exfiltrated data from Defendant's company servers (the "Data Breach" or "Breach").[2]

6. The SEC filing states in pertinent part as follows:

> **Item 8.01 Other Events.**
>
> Nutex Health Inc. (the "Company") recently learned of unauthorized activity involving data stored on its computer network. As a result, the Company has engaged an independent third-party cybersecurity response team and forensic experts, activated a cybersecurity response plan, implemented containment measures and notified law enforcement.
>
> Based on preliminary findings from the Company's ongoing investigation, the Company believes that certain information maintained on the Company's servers was accessed and exfiltrated by an unauthorized third party, including some information that may be private and/or confidential. To date, the Company has not identified any material impact on its business operations or financial reporting systems.
>
> The Company continues to assess whether, and to what extent, patient, employee, credentialed provider, confidential business and financial information, intellectual property, or other information may have been accessed, acquired, or exfiltrated and continues to evaluate the potential impact of the unauthorized activity on the Company, including any potential disclosure of private and/or confidential information by the third party.
>
> As of the date of this Current Report on Form 8-K, the Company does not believe that the unauthorized access has had, or is reasonably likely to have, a material impact on the Company's business strategy, operations, financial condition or results of operations.
>
> The Company continues to evaluate applicable regulatory and legal notification requirements, and the Company intends to make all required notifications based on its findings, including to impacted patients, if applicable.[3]

---

[2] UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Form 8-K, *Nutex Health, Inc.*, available at: https://www.sec.gov/Archives/edgar/data/1479681/000162828026058606/nutx-20260824.htm.

[3] *Id.*

7. According to Defendant's SEC Filing, and upon information and belief, highly sensitive PII and PHI were compromised during the Data Breach, including but not limited to: (i) names; (ii) dates of birth; (iii) Social Security numbers; (iv) driver's license or state identification numbers; (v) medical information; and/or (vi) financial information (collectively, "Private Information").

8. Upon information and belief, Defendant has not yet provided individual notice of the Data Breach to all victims of the Data Breach. Thus, most, if not all Class Members do not know that their Private Information has been compromised, and that they are, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

9. Upon information and belief, the Private Information compromised in the Data Breach contained highly sensitive patient data, representing a gold mine for data thieves. As such, the risk of identity theft and fraud will remain for Plaintiff's and Class Members' respective lifetimes.

10. Armed with the Private Information stolen in the Data Breach (and a significant head start), data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11. Upon information and belief, there has been no assurance offered by Defendant that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficiently to avoid a similar breach of its network

in the future.

12. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, and potential out-of-pocket expenses to remedy or mitigate the effects of the Data Breach.

13. Upon information and belief, the potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack such as this.

14. Upon information and belief, Defendant failed to properly monitor and properly implement data security practices with regard to the computer network and systems that housed the Private Information. Had Defendant properly monitored its networks, it would have discovered the Breach sooner.

15. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct. The Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

## II. PARTIES

16. Plaintiff **Deborah Lewis** is, and at all times mentioned herein was, an individual citizen of New Port Richey, Florida.

17. Defendant is a corporation that maintains its principal place of business at 1776 Yorktown Street, Suite 700, Houston, Texas, 77056. Defendant's registered agent is Tom Vo located at 5110 Ashbrook Lane, Houston, Texas, 77081.

## III. JURISDICTION AND VENUE

18. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendant has its principal place of business located in this District.

19. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

20. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. *Defendant's Business and Collection of Plaintiff's and Class Members' Private Information.*

21. Defendant is a healthcare management and operations company with two divisions: a hospital division and a population health management division.[4]

22. The hospital division owns, develops and operates innovative health care models, including micro-hospitals, specialty hospitals, and hospital outpatient departments (HOPDs).[5] This division owns and operates over 27 facilities in 12 states.[6]

23. The population health management division owns and operates provider networks

[4] NUTEX HEALTH, https://nutexhealth.com/.
[5] *Id.*
[6] *Id.*

such as Independent Physician Associations ("IPAs").[7]

24. As a condition of providing services, Defendant acquires, collects, and stores the Private Information of Plaintiff and the Class.

25. Plaintiff and Class Members were required to provide their Private Information to Defendant, either directly or indirectly, to receive healthcare services.

26. Due to the highly sensitive and personal nature of the Private Information Defendant acquires and stores, Defendant, upon information and belief, promised to, among other things: (i) keep patients' Private Information private; (ii) comply with industry standards related to data security and the maintenance of patients' Private Information; (iii) inform patients of its legal duties relating to data security and comply with all federal and state laws protecting patients' Private Information; (iv) only use and release patients' Private Information for reasons that relate to the services it provides; and (v) provide adequate notice to patients if their Private Information is disclosed without authorization.

27. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized access and exfiltration.

28. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

**B. *The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members.***

29. Despite these duties, Defendant experienced a data breach.

[7] *Id.*

30. On or around August 24, 2026, Defendant disclosed the following in an SEC filing:

> **Item 8.01 Other Events.**
>
> Nutex Health Inc. (the "Company") recently learned of unauthorized activity involving data stored on its computer network. As a result, the Company has engaged an independent third-party cybersecurity response team and forensic experts, activated a cybersecurity response plan, implemented containment measures and notified law enforcement.
>
> Based on preliminary findings from the Company's ongoing investigation, the Company believes that certain information maintained on the Company's servers was accessed and exfiltrated by an unauthorized third party, including some information that may be private and/or confidential. To date, the Company has not identified any material impact on its business operations or financial reporting systems.
>
> The Company continues to assess whether, and to what extent, patient, employee, credentialed provider, confidential business and financial information, intellectual property, or other information may have been accessed, acquired, or exfiltrated and continues to evaluate the potential impact of the unauthorized activity on the Company, including any potential disclosure of private and/or confidential information by the third party.
>
> As of the date of this Current Report on Form 8-K, the Company does not believe that the unauthorized access has had, or is reasonably likely to have, a material impact on the Company's business strategy, operations, financial condition or results of operations.
>
> The Company continues to evaluate applicable regulatory and legal notification requirements, and the Company intends to make all required notifications based on its findings, including to impacted patients, if applicable.[8]

31. Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

32. Plaintiff and Class Members provided their Private Information to Defendant,

---

[8] UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Form 8-K, *Nutex Health, Inc.*, available at: https://www.sec.gov/Archives/edgar/data/1479681/000162828026058606/nutx-20260824.htm.

either directly or indirectly, with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

33. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

34. Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

**C. *The Healthcare Sector is Particularly Susceptible to Data Breaches.***

35. Defendant was on notice that the healthcare industry has long been a routine target for data breaches.

36. In August 2014, after a cyberattack on Community Health Systems, Inc., the Federal Bureau of Investigation ("FBI") warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[9]

37. The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[10] In 2022, the largest growth in compromises occurred in the healthcare sector.[11]

---

[9] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820.

[10] IDENTITY THEFT RESOURCE CENTER, *2018 Key Findings*, available at: https://www.idtheftcenter.org/wp-content/uploads/2019/01/ITRC_2018-EOY-BREACH-REPORT-KEY-FINDINGS.pdf.

[11] IDENTITY THEFT RESOURCE CENTER, *2022 End-of-Year Data Breach Report* (Jan. 2023), available at: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf.

38. “The healthcare sector is a top target of threat actors because of the volume and sensitivity of patient data it handles, ranging from medical history to personally identifiable information (PII) and financial records. In the first few months of 2025, healthcare organizations faced an average of 2309 attacks per week, marking a 39% increase compared to last year.”[12]

39. When compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the “average total cost to resolve an identity theft-related incident … came to about $20,000,” and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[13]

40. Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. “Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers.”[14]

41. As a healthcare provider, Defendant knew, or should have known, the importance of safeguarding patients’ Private Information, including PHI entrusted to it, and of the foreseeable consequences if such PHI were to be disclosed. These consequences include the significant costs

---

[12] WIRE, *How Data Breaches Impact Different Industries* (July 28, 2025), https://wire.com/en/blog/the-impact-of-data-breaches-on-industries.

[13] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ .

[14] INSIDE DIGITAL HEALTH, *How to Safeguard Hospital Data from Email Spoofing Attacks* (Apr. 4, 2019), https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

that would be imposed on Defendant's patients as a result of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**D. *Defendant Failed to Comply with HIPAA.***

42. Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that HHS create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

43. Upon information and belief, Defendant's Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendant's Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff's and Class Members' PHI.

44. Upon information and belief, Plaintiff's and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

45. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

46. 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

47. Upon information and belief, Plaintiff's and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

48. Upon information and belief, Plaintiff's and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

49. Upon information and belief, Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

50. Upon information and belief, Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

51. It is reasonable to infer that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

52. It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

53. Given the occurrence of the Data Breach and impact such has had on victims' Private Information, it is reasonable for these victims, including Plaintiff and Class Members, to

believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

54. Upon information and belief, Defendant's Data Breach could have been prevented if Defendant had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

55. Upon information and belief, Defendant's security failures also include, but are not limited to:

a. Failing to maintain an adequate data security system to prevent data loss;

b. Failing to mitigate the risks of a data breach and loss of data;

c. Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d. Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f. Failing to identify and respond to suspected or known security incidents;

g. Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i. Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j. Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and/or

k. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq*.

56. Upon information and belief, because Defendant has failed to comply with HIPAA, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is also necessary to ensure Defendant's approach to information security is adequate and appropriate going forward. Defendant still maintains the PHI and other highly sensitive PII of its current and former patients, including Plaintiff and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent data breaches.

**E. *Defendant Failed to Comply with FTC Guidelines.***

57. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision

making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

58. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[15] . The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

59. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

60. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

[15] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to use reasonable measures to protect Private Information they collect and maintain from consumers. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

62. The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."[16]

63. As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

64. Defendant was at all times fully aware of its obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### F. *Defendant Failed to Comply with Industry Standards.*

---

[16] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), available at: https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

65. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

66. The Center for Internet Security's ("CIS") Critical Security Controls ("CSC") recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[17]

67. The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

> a. Control who logs on to your network and uses your computers and other devices.
> b. Use security software to protect data.
> c. Encrypt sensitive data, at rest and in transit.
> d. Conduct regular backups of data.
> e. Update security software regularly, automating those updates if possible.
> f. Have formal policies for safely disposing of electronic files and old devices.
> g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

---

[17] *The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list.

68. Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[18]

69. Upon information and belief, Defendant failed to implement industry standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

[18] *Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations.

### G. *Defendant Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information.*

70. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

71. Upon information and belief, Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect patients' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f. Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and/or

g. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

72. Upon information and belief, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

73. Upon information and belief, had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

74. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

### H. *Plaintiff and Class Members are at a Significantly Increased and Substantial Risk of Fraud and Identity Theft as a Result of the Data Breach.*

75. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[19] Exposure of highly sensitive personal

[19] *FTC Information Injury Workshop, BE and BCP Staff Perspective*, FEDERAL TRADE COMMISSION (Oct. 2018), available at: https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

76. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

77. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

78. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

79. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

80. One such example of how malicious actors may compile Private Information is through the development of "Fullz" packages.

81. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

82. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

83. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an

extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[20] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

84. Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

85. The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[21] After interviewing over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;
- 29-percent experienced financial losses exceeding $10,000;
- 40-percent were unable to pay bills;
- 28-percent were turned down for credit or loans;
- 37-percent became indebted;
- 87-percent experienced feelings of anxiety;
- 67-percent experienced difficulty sleeping; and
- 51-percent suffered from panic of anxiety attacks.[22]

---

[20] *See IdentityTheft.gov,* FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps.
[21] *2023 Consumer Impact Report* (Aug. 2023), IDENTITY THEFT RESOURCE CENTER, available at: https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf .
[22] *Id.* at pp. 9, 21–25.

86. PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[23]

87. Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

88. While credit card information and associated PII can sell for as little as $1–$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[24]

89. PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

90. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[25]

---

[23] *See* FEDERAL TRADE COMMISSION, *Warning Signs of Identity Theft*, https://consumer.ftc.gov/articles/what-know-about-identity-theft.

[24] *Data Breaches: In the Healthcare Sector,* CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector.

[25] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*, KAISER HEALTH NEWS (Feb. 7, 2014), https://kffhealthnews.org/news/rise-of-indentity-theft/.

91. The ramifications of Defendant's failure to keep its patients' Private Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

92. Upon information and belief, here, not only was sensitive medical information compromised, but financial information and Social Security numbers were compromised too. The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

93. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[26]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

94. PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

---

[26] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. Government Accountability Office (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf.

95. As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**I. *Plaintiff's and Class Members' Damages.***

***Plaintiff's Experience***

96. Plaintiff received healthcare services from one of Defendant's Clients.

97. Upon information and belief, Defendant maintained Plaintiff's Private Information on its systems before, during, and after the Data Breach.

98. Upon information and belief, Plaintiff's Private Information was compromised in the Data Breach.

99. Plaintiff learned of the Data Breach through her own research.

100. Plaintiff would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate data security to safeguard Private Information from theft, and that those systems were highly susceptible to a data breach.

101. Upon information and belief, Plaintiff suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

102. Upon information and belief, Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of receiving healthcare services from Defendant and which was compromised in, and as a result of, the Data Breach.

103. Upon information and belief, Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

104. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, because Defendant's systems have already been shown to be highly susceptible to compromise and are subject to further attacks so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its patients' Private Information

105. Upon information and belief, Plaintiff also suffered actual injuries in the form of: (i) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from Plaintiff; (ii) violation of her privacy rights; and (iii) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

***Classwide Injuries and Damages***

106. Upon information and belief, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

107. Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive services.

108. Upon information and belief, Plaintiff's and Class Members' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

109. As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

110. Plaintiff and Class Members may incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

111. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

112. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

113. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Defendant's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

114. Upon information and belief, Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach.

115. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019,

the data brokering industry was worth roughly $200 billion.[27] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $60 a year.[28]

116. As a result of the Data Breach, Plaintiff's, and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

117. Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

118. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its patients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

---

[27] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD, https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/.

[28] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

119. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V. CLASS ACTION ALLEGATIONS

120. Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23.

121. Specifically, Plaintiff propose the following Class, subject to amendment as appropriate:

> **Class**
>
> All individual citizens of the United States whose Private Information was accessed and/or acquired by unauthorized actors as a result of the Data Breach.

122. Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

123. Plaintiff reserves the right to modify or amend the definition of the Class, as well as add subclasses, before the Court determines whether certification is appropriate.

124. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of thousands of individuals whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

125. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant's conduct violated the FTCA and HIPAA;

c. When Defendant learned of the Data Breach

d. Whether Defendant's response to the Data Breach was adequate;

e. Whether Defendant unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

j. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

o. What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

p. Whether Defendant's conduct was negligent;

q. Whether Defendant's conduct was *per se* negligent;

r. Whether Defendant was unjustly enriched;

s. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t. Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and/or

u. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

126. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members,

and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

127. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

128. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

129. Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

130. Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

131. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI. <u>CLAIMS FOR RELIEF</u>

### COUNT I
### NEGLIGENCE
### <u>(ON BEHALF OF PLAINTIFF AND THE CLASS)</u>

132. Plaintiff restates and realleges paragraphs 1–131 as if fully set forth herein.

133. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

134. Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

135. Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

136. Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

137. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

138. Defendant's duty also arose because Defendant was bound by industry standards to protect its patients' confidential Private Information.

139. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

140. Upon information and belief, Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care

in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

141. Upon information and belief, Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

142. Upon information and belief, Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

143. Upon information and belief, Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with the FTCA;

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

144. Upon information and belief, Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

145. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

146. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

147. Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information.

148. As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which upon information and belief, is still in the possession of third parties, will be used for fraudulent purposes.

149. Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

150. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

151. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

152. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

153. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

154. Plaintiff restates and realleges paragraphs 1–131 as if fully set forth herein.

155. Defendant provided healthcare services to Plaintiff and Class Members and their healthcare providers. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for services and/or entrusting their valuable Private Information to Defendant in exchange for such services.

156. Through Defendant's services, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with its policies, practices, and applicable law.

157. As consideration, Plaintiff and Class Members paid money to Defendant and/or turned over valuable Private Information to Defendant. Accordingly, Plaintiff and Class Members bargained with Defendant to securely maintain and store their Private Information.

158. Defendant accepted payment and/or possession of Plaintiff's and Class Members' Private Information for the purpose of providing medical services to Plaintiff and Class Members.

159. In paying Defendant and/or providing their valuable Private Information to Defendant in exchange for Defendant's services, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard the Private Information as part of those services.

160. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to: (i) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (ii) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (iii) restricting access to qualified and trained employees and/or agents; (iv) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (v) applying or requiring proper encryption; (vi) implementing multifactor authentication for access; (vii) complying with HIPAA standards to make sure that Plaintiff's and Class Members' PHI would remain protected; and (viii) taking other steps to protect against foreseeable data breaches.

161. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

162. Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Defendant.

163. As a healthcare provider, Defendant recognized (or should have recognized) that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

164. Upon information and belief, Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information. Defendant further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

165. Additionally, Defendant breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

166. Defendant also breached the implied contracts with Plaintiff and Class Members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

167. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

168. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

169. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

170. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

171. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce violations, in violation of 45 CFR 164.306(a)(94).

172. Defendant further breached the implied contracts with Plaintiff and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq*.

173. Defendant further breached the implied contracts with Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR 164.530(c).

174. Upon information and belief, Defendant further breached the implied contracts with Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PHI.

175. A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide payment and/or accurate and complete Private Information to Defendant in exchange for Defendant's agreement to, *inter alia*, provide services that included protection of their highly sensitive Private Information.

176. Upon information and belief, Plaintiff and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

**COUNT III**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

177. Plaintiff restates and realleges paragraphs 1–131 as if fully set forth herein.

178. This Count is plead in the alternative to Plaintiff's Breach of Implied Contract Claim.

179. Plaintiff and Class Members conferred a benefit on Defendant by turning over their Private Information to Defendant and/or by paying for products and services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

180. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiff and Class Members.

181. As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

182. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

183. Upon information and belief, Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

184. If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

185. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of its wrongful conduct.

186. Upon information and belief, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

187. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

188. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

189. Plaintiff restates and realleges paragraphs 1–131 as if fully set forth herein.

190. This Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the laws and regulations described in this Complaint.

191. Defendant owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

192. Defendant still possesses Private Information regarding Plaintiff and Class Members.

193. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

194. This Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure its patients' Private Information and to timely notify victims of a data breach under the common law, HIPAA, and the FTCA;

b. Defendant's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect patients' Private Information; and

c. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure patients' Private Information.

195. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect patients' Private Information, including the following:

a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

iv. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

v. conducting regular database scanning and security checks;

vi. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii. meaningfully educating its patients about the threats they face with regard to the security of their Private Information, as well as the steps they should take to protect themselves.

196. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

197. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

198. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus preventing future injury to Plaintiff and other patients whose Private Information would be further compromised.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: August 31, 2026

Respectfully submitted,

*<u>/s/: Kennedy M. Brian</u>*
Kennedy M. Brian
Attorney-in-Charge
OK Bar No. 34617
S.D. Texas Bar No. 3891171
Tyler J. Bean (OK Bar No. 33834)
(*pro hac vice* application forthcoming)
**SIRI & GLIMSTAD LLP**
101 Park Avenue
Suite 1300, #16982799
Oklahoma City, OK 73102
Tel: (212) 532-1091
E: tbean@sirillp.com
E:kbrian@sirillp.com